UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANNON J. BONES, *a/k/a Shannon Joy*,

                                                       Plaintiff,              Case # 22-CV-6072-FPG

v.                                                                                DECISION & ORDER

COUNTY OF MONROE, et al.,

                                                      Defendants.
_____

## INTRODUCTION

This civil rights action arises out of Plaintiff Shannon J. Bones's removal from, and arrest in connection with, a school board meeting for the Fairport Central School District. Plaintiff brings claims against Brett Provenzano (the District's Superintendent), Peter Forsgren, Erica Belois-Pacer, Damon W. Buffum, Margaret Cardona, Joyce Kostyk, Brian Moritz, and Mary Caitlin Wight (all members of the school board), Benjamin Hamelin, Erica Henderson, and Alison Kendall (the arresting deputy sheriffs), as well as Monroe County, the Monroe County Sheriff's Office, and the Fairport Central School District. The County defendants[1] have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11. Plaintiff opposes the motion, ECF No. 17, and the County defendants have filed their reply. ECF No. 20. For the reasons that follow, the County defendants' motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the

---

[1] The County defendants are Monroe County, the Monroe County Sheriff's Office, Hamelin, Henderson, and Kendall.

defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## BACKGROUND

The following facts are from the complaint, unless otherwise noted. The school board meeting at issue occurred on the evening of August 24, 2021, in the auditorium of Fairport High School. ECF No. 1 ¶ 27. Plaintiff attended the meeting that night as a "taxpayer," a "parent of a student," and "in her capacity as a member of the press." *Id.* ¶ 28. Due to the ongoing COVID-19 pandemic, the school board required attendees to wear a protective face mask. *See id.* ¶¶ 29, 37, 38. Plaintiff complied, though at "various times during the meeting[] the mask slid below Plaintiff's nose." *Id.* ¶ 30. Plaintiff alleges that these slip-ups were "not purposeful" and were corrected "each time within seconds." *Id.*

At some point during the meeting, board members went into a fifteen-minute recess on the basis that Plaintiff "was not properly wearing her face mask." *Id.* ¶ 37. Plaintiff claims that this was a pretext to remove her from the meeting, insofar as everyone in attendance occasionally suffered from accidental "mask slippage," yet only Plaintiff was "singled out" for removal. ECF No. 1 ¶ 38. Board members, Provenzano, and private security guards hired by the district confronted Plaintiff, telling her that she "was not wearing her face mask properly" and must "leave the meeting." *Id.*

Although not expressly alleged, the plain implication from the complaint is that Plaintiff declined to leave the meeting despite this directive. As a result, Provenzano and the board members "summoned" deputies from the Monroe County Sheriff's Office to assist them. *Id.* ¶ 41. Plaintiff was "sitting peacefully" when deputies arrived and advised her "that she was being placed under arrest." *Id.* ¶ 42. "In full view of the numerous parents and school board members and other persons present in the auditorium," the deputies forcibly removed Plaintiff from the meeting, handcuffed her, and placed her in a police cruiser. *Id.* ¶ 46. Plaintiff remained in the cruiser for one hour, "in [] full view of passersby," until deputies released her on an appearance ticket charging her with trespass. *Id.*; ECF No. 1-2. The school board meeting continued during Plaintiff's detention. The trespass charge was later dismissed in Perinton Town Court. ECF No. 1 ¶ 55.

In Plaintiff's view, her arrest was not the result of a simple disagreement or dispute over her masking, but was a conspiracy perpetrated by board members and Provenzano, in conjunction with Monroe County and the Monroe County Sheriff's Office. The motivation for Defendants' conspiracy was Plaintiff's sociopolitical commentary. Plaintiff is a "broadcaster and political commentator by trade, and the host of a radio program based in the Rochester, New York area." *Id.* ¶ 26. Prior to the August 24, 2021 meeting, Plaintiff had appeared on "local, regional, and national news and entertainment shows" to criticize the school board's "policies, procedures, and decisions." *Id.* Among other things, Plaintiff criticized the school board's face-mask mandate for students and the board's restrictive speaking policies at school board meetings. *Id.* ¶ 31. Plaintiff alleges that board members were "well aware of [her] publicly voiced criticism." *Id.* ¶ 26. Plaintiff also claims that she openly criticized Monroe County and the Monroe County Sheriff's Office "on various issues and matters." *Id.* ¶ 32.

Plaintiff alleges that, prior to the meeting, the "School District, Provenzano, Board Members, County and Monroe County Sheriff" communicated "with one another to plan the specific tortious and unconstitutional conduct . . . against Plaintiff." ECF No. 1 ¶ 61. Specifically, Defendants intended to create a ruse by which they could have Plaintiff removed from the school board meeting so as to "stifle [her] political speech" and "teach [her] a lesson" about "speaking out" against them. *Id.* ¶¶ 80, 128. In furtherance of the conspiracy, Provenzano "falsely reported that Plaintiff was trespassing," which gave the deputies a pretext to arrest her. *Id.* ¶¶ 71-72. Plaintiff alleges that the deputies who arrested her were knowing participants in the conspiracy. *See, e.g.*, *id.* ¶ 80 (alleging that deputies knew that the school board was "attempting to use police powers to stifle critical political speech" and that they "permitted themselves to be used for that illegal purpose"). The arrest had the design and effect of humiliating and embarrassing Plaintiff in front of other parents and attendees. *Id.* ¶¶ 126, 128.

In February 2022, Plaintiff brought the present action. Against the County defendants, Plaintiff brings a panoply of constitutional and common-law claims. *See generally id.*

## DISCUSSION

The County defendants seek to dismiss all of the claims against them. *See* ECF No. 11-2 at 19. The Court discusses each claim below.

Before doing so, however, the Court must address some preliminary matters. First, the County defendants argue that Plaintiff has engaged in "impermissible group pleading." *Id.* at 6 (internal quotation marks omitted). A complaint may fail to give each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests" if it "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). However, a plaintiff is not

prohibited from "collectively referring to multiple defendants" so long as the "complaint alerts defendants that identical claims are asserted against each defendant." *Bruce Kirby, Inc v. Quarter Moon, Inc.*, No. 17-CV-1389, 2018 WL 3614120, at *1 (D. Conn. July 27, 2018).

In their original brief, the County defendants assert that Plaintiff engaged in impermissible group pleading, but they do not identify any particular paragraphs or sections of Plaintiff's complaint that cause them confusion. *See* ECF No. 11-2 at 6-7. Indeed, their argument is belied by the fact that, in their original brief, they were able to succinctly summarize the specific allegations and claims brought against them. *See id.* at 3-5. In their reply brief, the County defendants assert that Plaintiff's first cause of action is confusing, insofar as Plaintiff refers to all defendants collectively as "Defendants." *See* ECF No. 20 at 8. However, when read in light of the specific factual allegations that Plaintiff raises against each individual defendant, *see* ECF No. 1 ¶¶ 27-55, as well as Plaintiff's allegations relating to the purported conspiracy, *see id.* ¶¶ 58-82, Plaintiff's first cause of action is reasonably interpreted to allege that all of the defendants are liable on the various Section 1983 claims that Plaintiff raises. In that context, Plaintiff's use of the collective "Defendants" does not constitute impermissible group pleading. *See Bruce Kirby, Inc.*, 2018 WL 3614120, at *1.

Second, the County defendants ask that the Court consider extrinsic materials in connection with the motion. *See* ECF No. 11-2 at 4, 13. The Court declines to do so. A district court "should generally refrain from considering matters outside the pleadings when reviewing a 12(b)(6) motion to dismiss." *Falso v. Gates Chili Cent. Sch. Dist.*, 680 F. Supp. 2d 465, 466 (W.D.N.Y. 2010). The first item is a YouTube video recorded by Plaintiff at the meeting. Having reviewed the video, the Court does not find that it "contradict[s] or render[s] implausible" Plaintiff's allegations, so its consideration does not change the Court's analysis. *Hyman v. Abrams*, 630 F. App'x 40, 42

(2d Cir. 2015) (summary order).  While the video suggests that Plaintiff's alleged "mask slippage" was more intentional and egregious than claimed in the complaint, it does not contradict her central claim—that others at the meeting engaged in the same masking behavior as she did but were not targeted for removal or arrest.  *See* ECF No. 1 ¶ 38 (alleging that other attendees "had a similar problem with mask slippage and in some cases *had removed their masks entirely* at various points in the meeting" (emphasis added)).  The County defendants also proffer supporting depositions made by Provenzano and Todd Monahan (the District's Safety and Security Coordinator) in connection with Plaintiff's trespass charge.  *See* ECF Nos. 11-3, 11-4.  The Court may not consider those documents, which are neither "integral to nor relied on in the complaint."  *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 472 (W.D.N.Y. 2017).

With those issues resolved, the Court turns to the merits.

**I.   Claims under 42 U.S.C. § 1983 (First Claim)**

In her first claim for relief, Plaintiff alleges a litany of constitutional violations.  As the Court reads the complaint, Plaintiff alleges the following claims: (1) false arrest/false imprisonment under the Fourth Amendment; (2) excessive force under the Fourth Amendment; (3) retaliatory arrest under the First Amendment; and (4) an equal-protection violation under the Fourteenth Amendment.[2]  ECF No. 1 ¶¶ 95, 98.  In their motion, the County defendants only address the first two claims, so the Court confines its substantive analysis accordingly.

---

[2] Plaintiff also references several other bases for her first claim, including her "right to liberty," the privileges and immunities clause of the Fourteenth Amendment, and various state-law torts. ECF No. 1 ¶¶ 94, 98(a), (d), (e).  These are not cognizable claims.  *See Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 307 (E.D.N.Y. 2014) (rejecting Section 1983 claim premised on the "vague invocation of the right to life, liberty and the pursuit of happiness" (internal quotation marks omitted)); *Transitional Servs. of N.Y. for Long Island, Inc. v. N.Y.S. Office of Mental Health*, 91 F. Supp. 3d 438, 442 (E.D.N.Y. 2015) ("Section 1983 is enforceable only for violations of federal rights." (internal quotation marks omitted)); *Tropiano v. Pennsylvania State Police*, No. 06-1569, 2006 WL 2077013, at *4 (E.D. Pa. July 24, 2006) (discussing privileges and immunities clause of the Fourteenth Amendment).

### a. False Arrest/False Imprisonment

The County defendants argue that any claim of false imprisonment or false arrest must fail because the arresting deputies had probable cause or, for purposes of qualified immunity, arguable probable cause. ECF No. 11-2 at 11-13. The Court agrees that the complaint facially establishes the existence of probable cause.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under New York law or under § 1983." *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011) (summary order) (internal brackets omitted). "The same holds true for the false imprisonment claims because, under New York law, the claim is identical to a false arrest claim, and the federal claim looks to the elements of the state claim." *Id.* (internal citations and quotation marks omitted). This issue may be resolved on a motion to dismiss "where probable cause appears on the face of the complaint." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) (internal quotation marks omitted). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Martinez v. City of New York*, 340 F. App'x 700, 701 (2d Cir. 2009) (summary order) (internal quotation marks and brackets omitted).

Plaintiff was charged with trespass under Penal Law § 140.05, which reads: "A person is guilty of trespass when [s]he knowingly enters or remains unlawfully in or upon premises." Here, the complaint alleges that, after having committed several unintentional, *de minimis* violations of the board's masking requirement, Plaintiff chose to remain at the meeting despite being directed to "leave the meeting" for said violations. ECF No. 1 ¶¶ 38, 39. The complaint does not allege

that either Provenzano or the board members lacked the legal authority to order Plaintiff to leave for said violations of the masking requirement.[3] Deputies arrested Plaintiff after she failed to heed Provenzano and the board's order to depart. Based on these facts, the complaint facially establishes probable cause for the trespass charge. *See Berger v. Schmitt*, 91 F. App'x 189, 190 (2d Cir. 2004) (summary order) ("[U]nder New York law it is unlawful to remain on the premises after being personally given a lawful order to depart."); *see also Matthes v. Town of East Fishkill*, 785 F.2d 43, 46 (2d Cir. 1986) (concluding that individual's "[r]efusal to leave the [closed planning board meeting] when properly directed to do so gave probable cause for his arrest"). Except as discussed in Section I(c), *infra*, this conclusion holds true regardless of the existence of an improper motive on the County defendants' part. In addressing the existence of probable cause, a court does not examine "the actual motivations of the individual officers involved," since "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).

Therefore, Plaintiff's false arrest/false imprisonment claim under Section 1983 must be DISMISSED.

---

[3] To be sure, the complaint is unclear on this point. The Court understands Plaintiff's central argument to be that Provenzano and the school board used their otherwise valid legal authority in a retaliatory—and therefore unconstitutional—manner when they ordered Plaintiff to leave for her *de minimis* masking violations. *See, e.g.*, ECF No. 1 ¶¶ 38, 86, 95, 128. Nowhere in the complaint is it specifically alleged that, as a general matter, neither Provenzano nor the school board had the legal authority to remove an attendee from the board meeting due to a violation of the masking requirement—even a *de minimis* one. Although the complaint does allege that Plaintiff was "arrested without probable cause," that the accusation of trespass was "false," and that there was "no lawful order in effect to exclude" her from the meeting, the Court cannot accept these vague generalities and legal conclusions "masquerading as factual conclusions" in reviewing the sufficiency of Plaintiff's complaint. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal brackets omitted); *see, e.g.*, *Coleman v.City of Rochester*, No. 16-CV-6179, 2018 WL 6727535, at *2 n.2 (W.D.N.Y. Dec. 21, 2018) (declining to "accept as true" several "legal conclusions," including the allegation that plaintiff was "arrested without probable cause"). To the extent Plaintiff intended to proceed on the theory that Provenzano and the school board did not possess the legal authority to order her to leave for her masking violations, she is free to seek leave to file an amended complaint clarifying her allegations and proffering the necessary facts, if they exist, to support it.

### b. Excessive Force

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (internal quotation marks omitted). "The proper application of this standard requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (internal quotation marks omitted). At its most basic, this standard prohibits a government officer from "employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).

In this case, the County defendants assert, that "based upon the minimal force used" by the deputies to remove and arrest Plaintiff, she "has not alleged the use of excessive force." ECF No. 11-2 at 14. Because Plaintiff does not respond to this argument, the Court deems her excessive force claim abandoned. *See* ECF No. 17 at 14; *see also Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (collecting cases for the proposition that "[f]ederal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in [her] opposition papers defendants' arguments for dismissing such a claim."). Therefore, the excessive force claim is DISMISSED.

### c. Retaliatory Arrest

It is evident from the complaint that Plaintiff brings a claim of retaliatory arrest arising under the First Amendment. *See* ECF No. 1 ¶ 86 ("[T]he State's trespass laws were invoked . . .

solely for the purpose of excluding Plaintiff from exercising her First Amendment [rights]."); *see also id.* ¶¶ 87, 89, 95. Though the existence of probable cause ordinarily "defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive," a narrow exception exists "where there is 'objective evidence' that police refrained from arresting similarly situated people not engaged in speech." *Meyers v. City of New York*, 812 F. App'x 11, 15 (2d Cir. 2020) (summary order). On its face, Plaintiff's complaint appears to fit within this exception. Plaintiff's overriding claim is that, despite the fact many in attendance suffered from the same unintentional, *de minimis* "mask slippage" as she did, only she was targeted for removal and arrest. Plaintiff alleges that she was "singled out" for removal and arrest due to her prior speech about the District and the County. Defendants fail to address Plaintiff's claim for retaliatory arrest or the "narrow exception" that permits such claims to proceed notwithstanding the existence of probable cause. *See generally Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). Because the County defendants have not sufficiently developed any argument as to why Plaintiff's claim of retaliatory arrest should be dismissed, the Court declines to dismiss it at this juncture.[4]

### d. Equal Protection

Plaintiff argues that all of the defendants conspired to exclude her from the school board meeting "because of [her] political views and public commentary[] while allowing others to remain in attendance," in violation of her right to "equal protection under the laws." ECF No. 1 ¶ 98(e). The County defendants do not address this claim in their briefing. *See generally* ECF Nos. 11-2, 20. Accordingly, the Court has no basis on which to dismiss it.

---

[4] Plaintiff's First Amendment retaliation claim may be more broadly construed to challenge the school board's initial order to depart, separate and apart from her subsequent arrest. *See, e.g.*, ECF No. 1 ¶¶ 38, 87. To the extent Plaintiff intended to bring such a claim against the County defendants, it may proceed for the same reason.

### II.   State-Law False Arrest/False Imprisonment (Second/Third Claims)

Plaintiff's state-law false arrest/false imprisonment claims are subject to the same standards as the Section 1983 false arrest claim and fail for the same reasons. *See* Section I(a), *supra*. These claims are therefore DISMISSED.

### III.   State-Law Battery (Fourth Claim)

Although, under state law, "any use of force against a plaintiff may constitute an assault and battery" if the "arrest is determined to be unlawful," in this case the arrest was, as discussed above, lawful. *5 Borough Pawn, LLC v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010). Consequently, Plaintiff could only sustain a claim of state-law battery if the deputies' "use of force was unreasonable or excessive." *Ladoucier v. City of New York*, No. 10-CV-5089, 2011 WL 2206735, at *6 (S.D.N.Y. June 6, 2011). As discussed above, Plaintiff did not respond to the County defendants' assertion that she "has not alleged the use of excessive force." ECF No. 11-2 at 14. Therefore, to that extent, Plaintiff's state-law battery claim is deemed abandoned, and the claim is DISMISSED. *See Robinson*, 2010 WL 5376204, at *10.

### IV.   Defamation (Fifth Claim)

The County defendants move to dismiss Plaintiff's defamation claim on the basis that Plaintiff fails to allege that they "published any statement about plaintiff to anyone, or that any statement purportedly published by a County defendant about plaintiff was false." ECF No. 11-2 at 14. Plaintiff does not oppose dismissal of this claim. ECF No. 17 at 20 n.4. Accordingly, this claim is DISMISSED.

### V.   Intentional Infliction of Emotional Distress (Sixth Claim)

The County defendants contend that Plaintiff's claim of intentional infliction of emotional distress is not cognizable because she has failed to allege "extreme and outrageous conduct." ECF

No. 11-2 at 15. The Court agrees. An essential element for the claim of intentional infliction of emotional distress is extreme and outrageous conduct, which must " transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Sorrell v. Cty. of Nassau*, 162 F. Supp. 3d 156, 172 (E.D.N.Y. 2016). In this case, the complaint alleges that Plaintiff was ordered to leave a school board meeting due to unintentional, *de minimis* masking violations, that she refused to leave, and that she was then arrested for trespass in a public setting and in full view of other attendees and community members. Even accepting Plaintiff's claim that the entire chain of events was orchestrated by Defendants to "teach [her] a lesson" and punish her for her speech, ECF No. 1 ¶ 128, it was also dependent on Plaintiff's own, knowing refusal to depart. While embarrassing, Defendants' conduct was "not sufficiently extreme and outrageous absent some other grievous conduct." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011); *see also Gray v. Weselmann*, 737 F. App'x 30, 33 (2d Cir. 2018) (summary order) (where probable cause existed, government's arrest, detention, and prosecution of plaintiff was not "extreme or outrageous"). This claim is DISMISSED.

## VI. Negligent Infliction of Emotional Distress (Seventh Claim)

Because Plaintiff has failed to allege extreme and outrageous conduct, her claim for negligent infliction of emotional distress must fail as well. *See Young v. Southwest Airlines Co.*, 409 F. Supp. 3d 110, 116 (E.D.N.Y. 2017) ("[T]he requirement of extreme and outrageous conduct in the NIED context is equivalent to that for IIED."). This claim is DISMISSED.

## VII. Civil Conspiracy (Eighth Claim)

The County defendants argue, and the Court agrees, that Plaintiff's civil conspiracy claim fails given the dismissal of the other state-law claims. "New York does not recognize an independent tort of conspiracy, but does allow a claim for civil conspiracy to connect the actions

of separate defendants with an otherwise actionable tort." *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017) (internal citation and quotation marks omitted. "Thus, a claim for civil conspiracy may stand only if it is connected to a separate underlying tort." *Id.* at 478-79 (internal quotation marks omitted). Because Plaintiff has no viable underlying tort on which to base a claim for civil conspiracy, the conspiracy claim must be DISMISSED.

### VIII. Conspiracy to Interfere with Civil Rights under 42 U.S.C. §§ 1985, 1986 (Ninth Claim)

Plaintiff alleges that the County defendants are liable under 42 U.S.C. §§ 1985, 1986 for conspiracy to interfere with her civil rights. *See* ECF No. 1 at 29. As the County defendants argue, however, the Section 1985 claim fails because Plaintiff fails to allege "some racial or [] otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004). Plaintiff does not claim to have made that showing in her complaint. *See* ECF No. 17 at 19-20; *see also Levine v. New York State Police*, No. 21-CV-1181, 2022 WL 1987845, at *14 (N.D.N.Y. June 6, 2022). As a result, Plaintiff's Section 1986 claim must also be dismissed. *Steadman v. Mayo*, No. 09-CV-5154, 2012 WL 1948804, at *5 (S.D.N.Y. Mar. 27, 2012).

These claims are DISMISSED.

### IX. Monroe County Sheriff's Office

The County defendants also argue that all claims against the Sheriff's Department must be dismissed because it "is not an entity capable of being sued." ECF No. 11-2 at 7. Plaintiff does not oppose the dismissal of such claims. *See* ECF No. 17 at 7 n.2. Accordingly, all claims against the Sheriff's Department are DISMISSED WITH PREJUDICE.

**CONCLUSION**

For the reasons stated herein, the County defendants' motion to dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART. All claims against the Monroe County Sheriff's Office are dismissed, and the Clerk of Court is directed to terminate that entity as a defendant. All claims against Monroe County, Hamelin, Henderson, and Kendall are dismissed, except for Plaintiff's (a) Section 1983 claim for retaliatory arrest under the First Amendment; and (b) Section 1983 claim for violation of her equal protection rights. Within thirty days of entry of this Decision & Order, the remaining County defendants shall file their answers.

IT IS SO ORDERED.

Dated: October 4, 2022
      Rochester, New York

                                          HON. FRANK P. GERACI, JR.
                                          United States District Judge
                                          Western District of New York